# Affidavit

I, Benjamin V. Donahue, being duly sworn, depose and state the following

I am a Special Agent with Homeland Security Investigations (HSI) within United States Immigration and Customs Enforcement (ICE) assigned to the Resident Agent in Charge (RAC) Grand Junction, Colorado.  I have been so employed since October of 2003.  Prior to that, I served as a Trooper with the Colorado State Patrol for seven years. I have attended and graduated from the Criminal Investigator Training Program and the ICE Special Agent Training Program located at the Federal Law Enforcement Training Center in Brunswick Georgia. I also graduated from Colorado State University in 1995 with a Bachelor of Arts in Political Science.   As part of my daily duties as an HSI agent, I have the authority to investigate and enforce violations of various titles of the United States Code, to include Title 8 (Aliens and Nationality), Title 18 (Crimes and Criminal Procedure), Title 19 (Customs), Title 21 (Food and Drugs) and Title 31 (Money and Finance).

In my capacity as a Special Agent for Homeland Security Investigations I investigate crimes involving smuggling of contraband and humans via surface, air and marine methods into and out of the United States. During my training I have received specific instruction on conducting investigations related to identity theft, counterfeit identity documents, fraud related to access devices.

This affidavit is in support of an arrest warrant pursuant to Title 18 USC 1028(a)(7), 18 USC 1029(a)(3)

## Background and Experience

The information contained within this affidavit is based upon my personal knowledge as well as information shared with me by other HSI agents, Troopers with the Colorado State Patrol as well as representatives from private industry and observations accumulated while this investigation, as well as upon my training and experience. Because this affidavit is being submitted for the limited purpose of securing a complaint and arrest warrant I have not included each and every fact known concerning this investigation. Instead, I have set forth facts that I believe are sufficient to establish probable cause to conclude that Ngan Ha Thi LE aka Helena LEE was in possession of fraudulent identity

documents and access documents without authorization.

## INVESTIGATION

On Wednesday, January 30, 2019, at approximately 1510 hours, Colorado State Patrol Trooper Louis Anderson was parked, stationary in the median crossover of Interstate 70 at approximately mile post 10.  Trooper Anderson was observing westbound traffic as it passed his position.  Trooper Anderson observed a white-in-color Toyota Highlander with "Las Vegas" Nevada license plates pass his position and observed that it appeared to have a tinted front windshield.  Trooper Anderson exited the median and caught up to the vehicle at approximately mile post 8.  Trooper Anderson observed the vehicle travel in the left lane for approximately one mile without passing any vehciles.  Trooper Anderson visually estimated the vehicle's speed at 80 miles per hour in a posted 75 miles per hour zone.  Trooper Anderson activated his RADAR unit and clocked the vehicle's speed at 82 miles per hour in a posted 75 miles per hour zone.  At approximately mile post 5 Trooper Anderson observed the vehicle cross over the right fog line with its right wheels onto the right shoulder of the roadway and then back again into the travel lane.  At approximately 1517 hours Trooper Anderson conducted a traffic stop on the Toyota Highlander.  It had a Nevada license plate of LVF27T.  The vehicle came to a stop on the right shoulder at approximately mile post 2 on westbound Interstate 70.

Trooper Anderson stopped the vehicle for violations of:
C.R.S. 42-4-201(4)       Driver's Vision Obstructed Through Required Glass
C.R.S. 42-4-1013(1)      Drove Vehicle In Passing Lane When Prohibited
C.R.S. 42-4-1101(8)(b)   Speeding
C.R.S. 42-4-1007(1)(b)   Failed To Drive in Single Lane (Weaving)

Trooper Anderson contacted the vehicle using a passenger-side approach. Trooper Anderson introduced himself and informed the driver of the reason for the traffic stop.  The vehicle was occupied by a male driver, male front passenger and female rear passenger.  All of the occupants appeared nervous.  The front passenger had sweat on his upper lip and Trooper Anderson could see the pulse in the right side of his neck.  He was avoiding eye contact and appeared to be forcing a smile.

Trooper Anderson asked the driver for his license.  He identified himself with a Nevada driving license as Tuan Ngoc TRAN DOB: XX/XX/1959 of Las Vegas, Nevada.  His hands were shaking notably and he appeared to move with nervous

2

energy.  He was fidgeting and breathing rapidly.  Trooper Anderson asked the male passenger if he could see his identification.  He voluntarily identified himself with a California Identification Card as David PINEDO DOB: XX/XX/1980 of Los Angeles, California.  Trooper Anderson also asked the female passenger if he could see her identification.  She voluntarily identified herself as Helena LEE DOB: XX/XX/1970 of Las Vegas, Nevada.  LEE also appeared nervous because her hands were shaking and she appeared to be breathing rapidly.  She also appeared to be forcing a smile.

Trooper Anderson asked for the vehicle documents and engaged the occupants in general conversation about their travel plans.  The plans were vague and appeared unlikely.  LEE did most of the talking and the males appeared to nod and agree with what she was saying.  The vehicle was registered in LEE's name.

Trooper Anderson informed TRAN that he would only be issuing a warning for the traffic infractions and that he would not be writing any citations.  Trooper Anderson returned to his patrol vehicle to conduct routine checks on the occupants.

During the checks Trooper Anderson learned LEE and PINEDO both had criminal histories.

Trooper Anderson returned to the Highlander and returned all of the documents to each of the occupants individually.  Trooper Anderson again told TRAN that he was only getting a warning.  Trooper Anderson told TRAN that he was finished with the traffic stop and asked if he could talk with him further.  All of the vehicle occupants consented to further conversation.

Trooper Anderson asked if there was anything illegal in the vehicle. They all denied that there was anything illegal in it.  Trooper Anderson asked for consent to search the vehicle.  LEE verbally granted consent to search the vehicle.  Trooper Anderson asked her if she was sure, and she again affirmed that he could search the vehicle and its contents.

Trooper Anderson asked all of the occupants to exit the vehicle.  Trooper Anderson performed a pat-down for weapons and asked them to wait in a safe location off the shoulder a short distance infront of the Highlander.  Trooper Anderson noticed that LEE removed her purse from the rear seat and was clutching it.  Trooper Anderson asked her if he could check inside the purse for weapons and she unzipped a few zippers.  Trooper Anderson observed a large

sum of currency rubber-banded in one section of the purse. Trooper Anderson removed the purse from LEE and placed it on the hood of the Highlander.

Trooper Anderson deployed K-9 Dyno on the vehicle exterior. K-9 Dyno gave a positive alert on the purse. It was later determined that the purse contained approximately $16,000 in United States Currency.

During a hand search of the vehicle Trooper Anderson located approximately 37 iPhone Xr phones, 6 iPhone Xs phones, 6 iPhone X phones, 2 iPhone 7 phones, 2 iPad Pro tablets, 4 Apple Watch Series 4 and 2 Apple AirPods. The total value of all electronics is estimated to be approximately $43,000. Receipts attached to some of the phones appeared to show that they were purchased in the Denver Metro area on 01/27/2019 using various forms of payment to include debit cards.

Approximately 37 fraudulent identifications were located. Based on Trooper Anderson's training and experience they appeared fraudulent. The fraudulent identifications were in the likeness of driving licenses from California, Nevada and Iowa. LEE's picture was on approximately 15 of the fraudulents identifications. PINEDO's picture was on approximatley 5 of the fraudulent identifications.

Approximately 25 credit and debit cards with varying names were located. None of the names on those cards matched the vehicle occupants' names.

Ledgers were located that contained names and account numbers. Multiple cellphone SIM cards were taped to some pages with phone numbers and names written.

Documents showing T-Mobile account-holder information were found. Spreadsheet documents that were found appeared to contain account numbers and telephone numbers along with names of individuals which appeared to be associated to the T-Mobile accounts.

LEE, PINEDO and TRAN were all detained pending further investigation.

Trooper Anderson requested our assistance on scene. Myself and Special Agent Tim Stanley responded to the traffic stop. Resident Agent in Charge Steve Ussher arrived shortly after. It was deemed that the multiple identifications, credit cards and documents all appeared to have been or going to be used for fraudulently obtaining the Apple products from T-Mobile retail stores.

The electronics were seized pending further investigation.

LEE, PINEDO and TRAN were transported to the HSI office in Grand Junction. LEE, PINEDO and TRAN were all read the Miranda Advisement. LEE invoked her right to remain silent and requested an attorney. LEE was not interviewed. PINEDO and TRAN seperately waived their rights and were interviewed seperately. Both signed Miranda Rights waiver forms. Both of the interviews were recorded. Myself, SA Tim Stanley and Trooper Anderson conducted the interviews.

During the interviews TRAN admitted to knowing that LEE and PINEDO were involved in some kind of criminal activity but said that he only drove the car to multiple T-Mobile stores in the Denver Metro area and waited in the vehicle while LEE and PINEDO went into the stores. He stated he knew they were purchasing cell phones but did not know how or why they were doing so. TRAN was released without charges, pending further investigation.

PINEDO admitted to knoweldge of the criminal activity. He told us he was recruited in the Las Vegas area to work as a phone buyer. He said he used fraudulent identification cards provided by LEE and an unidentified male co-conspirator to obtain cell phones in T-Mobile stores. He said he would use the fraudulent identification (which had the name of an actual T-Mobile account-holder and PINEDO's picture) to obtain a replacement iPhone for one which he claimed he had lost. PINEDO said LEE and the unidentified male paid him $100 cash for every phone that he was able to purchase. A cursory examination of the documents found in the Highlander revealed multiple transactions at numerous T-mobile stores in Arizona, Oregon, Washington and Nevada. About ten more fake drivers licenses were also located. At least three additional unidentified individuals images are on those fraudulent state identifications. Some of the presumed fradulent identification numbers were run through the National Law Enforcement Telecommunications System (NLETS). Those came back with no record, confirming they were not issued by a state government agency.

## Conclusion

Based on the information contained in this affidavit your affiant submits that probable cause exists to believe that Ngan Ha Thi LE aka Helena LEE violated 18 USC 1028(a)(7) and 18 USC 1029(a)(3).

Wherefore, I respectfully request that a complaint and arrest warrant for Ngan Ha Thi aka Helena LEE.

_s/ Benjamin V. Donahue_
Benjamin V. Donahue
Special Agent
Homeland Security Investigations

Subscribed, attested to, and acknowledged by reliable electronic means on February __7____, 2019.

                            s/ Gordon P. Gallagher
                          _____
                          Gordon P. Gallagher
                          United States Magistrate Judge

Application and affidavit reviewed and submitted by AUSA Pete Hautzinger.